UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

         Plaintiff,

  -vs-                         Case No. 23-CR-39-WMC

GUSTAVO REYES,                 Madison, Wisconsin
                                May 24, 2023
         Defendant.        1:06 p.m.

---

STENOGRAPHIC TRANSCRIPT OF PLEA HEARING
HELD BEFORE U.S. DISTRICT JUDGE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiff:

                Office of the United States Attorney
                BY:   AARON D. WEGNER
                Assistant United States Attorney
                222 West Washington Avenue, Suite 700
                Madison, Wisconsin  53703

For the Defendant:

                Jones Law Firm
                BY:   WILLIAM R. JONES
                P.O. Box 44188
                Madison, Wisconsin  53744

Also appearing:  GUSTAVO REYES, Defendant
                MARIAH STIEVE, U.S. Probation Officer
                PAULA NAVARRO-GOMEZ, Spanish Interpreter
                 (Appearing telephonically)

Jennifer L. Dobbratz, RMR, CRR, CRC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 410
Madison, Wisconsin  53703
(608) 261-5709

```
 1              (Proceedings called to order at 1:06 p.m.)

 2              THE CLERK:  Case No. 23-CR-39-WMC, the United States of

 3    America v. Gustavo Reyes, is called for a plea hearing.

 4         May we have the appearances, please.

 5              MR. WEGNER:  Good afternoon, Your Honor.  Aaron Wegner

 6    on behalf of the United States.

 7              MR. JONES:  Mr. Reyes is here in person and with his

 8    attorney, William Jones.  Good afternoon.

 9              THE COURT:  Good afternoon, all.

10         We are here for a plea hearing based on a written plea

11    agreement signed by the defendant on April 23rd previously

12    provided to the Court.

13         I note that the defendant is being assisted by an

14    interpreter, so I'll ask the interpreter to please identify

15    themselves, and then we'll proceed with swearing in.

16              THE INTERPRETER:  Yes, Your Honor.  Paula Navarro-Gomez

17    from the Southern District of California with an oath on file.

18              THE COURT:  Thank you very much.  It is generally our

19    practice to actually swear in the interpreter, although --

20              THE INTERPRETER:  Of course, Your Honor.

21              THE COURT:  If you would be good enough to raise your

22    right hand.

23              THE INTERPRETER:  Yes.

24         PAULA NAVARRO-GOMEZ, SPANISH INTERPRETER, SWORN

25              THE COURT:  Thank you so much.
```

And with that, I'll turn first to the -- because this is proceeding on, I think, a first appearance, with the somewhat untimely notice to both counsel that the government is obligated to disclose favorable evidence to the accused under *Brady v. Maryland* and its progeny as set forth in Rule 5(f) and that any favorable evidence under *Brady* need only have to show some weight and includes both exculpatory and impeaching evidence to be part of that disclosure. Finally, a failure to timely disclose evidence may result in sanctions, including but not limited to adverse jury instructions, dismissal of charges, and contempt proceedings.

I'm confident, Mr. Anderson (sic), that you believe the government has discharged those obligations?

MR. WEGNER: I understand the obligation, Your Honor, and it has --

THE COURT: Mr. Wegner. I apologize.

MR. WEGNER: That's okay. And we have discharged that obligation.

THE COURT: And, Mr. Jones, you have no reason to doubt the discharge of those obligations?

MR. JONES: That is correct.

THE COURT: With that then, I'll ask if you and your client have received a copy of the information and ask whether you wish it read aloud or waive reading.

MR. JONES: We have received it. I have been using an

1    interpreter to communicate with Mr. Reyes over several months,

2    and I believe the interpreter is competent, but I think in the

3    exercise of caution, given this stage, I would prefer to have

4    the information read to him.

5         THE COURT:  Understanding that we have an interpreter

6    who will have to discharge that, I will ask, Mr. Wegner, for you

7    to read the information in open court.

8         MR. WEGNER:  Yes, Your Honor.

9    The United States Attorney charges, Count 1, at times

10   material to this information:

11   Gustavo Reyes owned and operated Reyes Drywall and Elite

12   Drywall, LLC, both sole proprietorship drywall installation

13   businesses that operated in and around Madison, Wisconsin.

14   Reyes operated his business as Reyes Drywall during 2013 and

15   2014 and as Elite Drywall, LLC, during 2013, 2014, 2016, and

16   2017.

17   Elite Drywall, LLC, is a Wisconsin single member LLC,

18   limited liability company, registered to Reyes which elected to

19   be taxed as a disregarded entity, a Schedule C business similar

20   to a sole proprietorship.

21   On his self-prepared income tax returns filed with the

22   Internal Revenue Service, the IRS, for the 2013 and 2014 tax

23   years, Reyes included a Schedule C for Reyes Drywall which

24   reported profits, taxable income, and related taxes.

25   In 2015, the IRS commenced a civil audit of Reyes' income

tax returns for 2013 and 2014 and determined that he had significantly underreported his income for those years. Between 2015 and 2019, the IRS sent multiple notices to Reyes regarding tax deficiency assessments for the 2013 and 2014 tax years, but he did not respond.

On December 22nd of 2014, the IRS filed a tax lien in Dane County, Wisconsin, for tax year 2013 against Reyes in an attempt to collect tax due and owing. On February 9th of 2017, the IRS filed a tax lien in Dane County for tax year 2014 against Reyes.

On October 16th, 2018, the IRS sent Reyes a letter requesting that he file income tax returns for the 2016, 2017, and 2018 tax years. Between November of 2018 and April of 2019, an IRS revenue agent filed levies on several business accounts related to Reyes' drywall business. On May 3rd of 2019, the IRS filed an amended tax lien against Reyes in Dane County for the 2013 and 2014 tax years.

On October 12th, 2019, Reyes used an accountant to file his income tax returns with the IRS for the 2016, 2017, and 2018 tax years. However, Reyes failed to make any payment toward the total amount due and owing for these tax years.

For the years 2013 to 2018, Reyes owed $557,907.19 of tax due and owing, and as of March 9th, 2023, Reyes has never made a voluntary payment to the IRS.

Paragraph 2: From in or about 2013 to in or about 2020, in the Western District of Wisconsin and elsewhere, the defendant,

Gustavo Reyes, willfully attempted to evade and defeat the

collection of $557,907.19 of personal income taxes due and owing

for the tax years 2013, 2014, 2016, 2017, and 2018 by committing

the following affirmative acts of evasion:

Beginning with tax year 2018 and continuing until 2020,

Reyes employed up to five nominee entities through which he

operated his drywall business, including Royal, LLC; American

Drywall; and Morales Construction, and those would be termed the

nominee entities.

On January 11th of 2018, Royal, LLC, was registered with

the Wisconsin Department of Financial Institutions, known as

DFI, with, quote, Y.J. as the registered agent. Reyes

instructed Y.J. to open four different bank accounts at three

different banks for Royal, LLC. After the bank accounts were

created, Reyes started operating his drywall business through

the bank accounts associated with Royal, LLC. Despite listing

Y.J. as the registered agent, Reyes handled all aspects of

Royal, LLC's drywall business, including bidding projects and

hiring employees.

Reyes failed to report any of the income from Royal, LLC,

in his personal income tax return for the 2018 tax year.

On November 30th of 2018, American Drywall was registered

with DFI with, quote, D.M. as the registered agent. Reyes

instructed D.M. to open multiple bank accounts for American

Drywall. Reyes used the American Drywall bank accounts to

1    operate his drywall business, including depositing checks from

2    contractors and withdrawing cash to pay employees.

3        On May 22nd, 2019, Morales Construction was registered with

4    DFI with, quote, R.V. as the registered agent.  Reyes instructed

5    R.V. to open a bank account for Morales Construction at BMO

6    Harris.  Reyes used the Morales Construction bank account at BMO

7    Harris to operate his drywall business.  For example, Reyes

8    instructed R.V. to withdraw cash from the bank account and

9    provide it to him so he could pay his employees.  Reyes

10    continued to operate this drywall business through the Morales

11    Construction bank account until at least June of 2020.

12        By operating his drywall business through the nominee

13    entities, Reyes attempted to defeat IRS collection efforts for

14    tax years 2013, 2014, 2016, 2017, and 2018, all in violation of

15    Title 26, United States Code, Section 7201.

16        THE COURT:  Mr. Wegner, I'll put you to work again to

17    state the maximum and, if applicable, any minimum penalties to

18    which Mr. Reyes would be subject if found guilty.

19        MR. WEGNER:  Yes, Your Honor.

20        The maximum penalty here is 5 years in prison, maximum fine

21    is $250,000, maximum term of supervised release is 3 years.  In

22    addition, there is a $100 special assessment and also the entry

23    of an appropriate restitution order as well as the costs of

24    prosecution.

25        THE COURT:  Mr. Jones, have you had sufficient time to

1    talk with your client about these possible penalties as well as

2    the charges that were just put on the record and any possible

3    defenses he may have to those charges?

4            MR. JONES:  Yes.

5            THE COURT:  Mr. Reyes, it's my understanding that you

6    do wish to enter a plea of guilty to the one-count information;

7    is that correct?

8            THE DEFENDANT:  That's correct.

9            THE COURT:  And with that, before I can actually accept

10    your plea, it's my obligation to ensure that you're acting

11    freely and voluntarily after adequate opportunity to consult

12    with counsel, with an understanding of both the charges against

13    you and the consequences of a plea of guilty, and also to ensure

14    that there's a factual basis.  To do those things, I'll need to

15    ask you a series of questions under oath, so I would ask that

16    you stand at this time, raise your right hand, and be sworn by

17    the clerk.

18            **GUSTAVO REYES, DEFENDANT, SWORN**

19            THE DEFENDANT:  Yes, that's the truth.

20            THE COURT:  You may be seated.

21    My first questions just go to ensuring that you're ready

22    and capable to proceed today.

23    Are you having any difficulty with the interpretation?

24            THE DEFENDANT:  No, none.

25            THE COURT:  If you do have any question or doubt about

1    what I'm asking you, please just let me know, and I'll try to

2    rephrase it.  All right?

3            THE DEFENDANT:  Okay.

4            THE COURT:  Can you tell me how old you are and how far

5    you progressed in terms of formal education?

6            THE DEFENDANT:  I am 50 years old, and I only completed

7    until the sixth grade.

8            THE COURT:  And have you had any training on the job or

9    job certifications of any kind since you left school?

10           THE DEFENDANT:  No, none.

11           THE COURT:  I assume that you have some -- I understand

12   that you want to engage in this colloquy in Spanish, but I

13   assume you have some experience speaking English given the

14   amount of time you've been here in the country?

15           THE DEFENDANT:  Just the basics.

16           THE COURT:  Understood.

17       Is there any reason why you would have trouble

18   understanding today's proceedings today in particular whether

19   because of an illness, because you're overly tired, because the

20   interpretation isn't accurate, or because you are under the

21   influence of a prescription medication or illicit drug or

22   alcohol?  Any reason at all that you would have trouble

23   understanding the proceedings?

24           THE DEFENDANT:  No, none.  It's all fine.

25           THE COURT:  Very good.  Then I'm going to start with

1       the charge against you.

2           Can you tell me in your own words what you understand

3       you're being charged with doing in the information?

4               THE DEFENDANT:  I'm sorry.  I didn't understand that.

5       Could you please repeat?

6               THE COURT:  Absolutely.  I just want you to tell me in

7       your own words what you understand the basic charge is against

8       you in this proceeding, what you're being charged with doing by

9       the government.

10              THE DEFENDANT:  Oh.  Trying to avoid taxes.

11              THE COURT:  And that's essentially right.  In

12      particular, you understand you're being charged with willfully

13      attempting to evade and defeat collection of personal income

14      taxes?  You understand that the charge is that you did that

15      willfully?

16              THE DEFENDANT:  Okay.  Yes, I do.

17              THE COURT:  And you also understand that you're being

18      charged with having evaded taxes willfully for the years 2013,

19      2014, 2016, 2017, and 2018; is that correct?

20              THE DEFENDANT:  That's true.  I just thought it wasn't

21      that serious.

22              THE COURT:  But you now understand that it is?

23              THE DEFENDANT:  Yes, I understand now.

24              THE COURT:  You also understand that you're charged

25      with specific acts of evasion, including, beginning with the tax

1    year 2018 and continuing through 2020, creating five entities,

2    including Royal, LLC; American Drywall; Morales Construction;

3    and other entities that went by the designation R.V. in order to

4    open bank accounts to operate your drywall business without the

5    IRS knowing?  Do you understand that's the charge against you?

6           THE DEFENDANT:  Yes, I understand.

7           THE COURT:  And that those were each attempts to defeat

8    IRS collection of the income taxes owed?  You understand that's

9    part of the charge?

10          THE DEFENDANT:  Yes, I understand.

11          THE COURT:  Do you also understand that if I were to

12   accept your plea today and adjudge you guilty, that you could be

13   subject to a maximum penalty of 5 years in prison, a $250,000

14   fine, a 3-year period of supervised release, a $100 special

15   assessment, and entry of an appropriate restitution order as

16   well as requirements to reimburse for costs of prosecution?

17          THE DEFENDANT:  Yes, I understand.

18          THE COURT:  And, finally, do you understand that if I

19   were to impose a period of supervised release, that you could be

20   subject to further penalties if you violated the terms and

21   conditions of release up to and including additional time in

22   prison?

23          THE DEFENDANT:  Yes, I understand.

24          THE COURT:  In addition to the extent as noted in the

25   plea agreement, do you understand that you could be subject to

1    further penalties if -- as to your status to remain in the

2    United States up to and including possible deportation?

3              THE DEFENDANT:  Yes, I understand.

4              THE COURT:  And have you had enough time to talk with

5    your counsel, Mr. Jones, about the nature of the charges, the

6    facts the government believes it could prove, the federal

7    sentencing guidelines, as well as the statutory penalties here?

8    Have you had a chance to talk about all those things with your

9    counsel?

10             THE DEFENDANT:  Yes.

11             THE COURT:  As for the federal sentencing guidelines,

12   those are first calculated by the probation office looking at

13   the number of points attributable to this offense.  They will

14   also consider other relevant factors to your crime, which would

15   certainly include the amount of money that you've evaded in

16   paying.  They would give you credit for the fact that you've

17   accepted responsibility by pleading guilty, although that might

18   be denied you if there were reason to deny you that credit.

19   They would consider your role in this offense, any prior

20   criminal record, and any other factor that office determines to

21   be relevant, at which point the probation office issues a report

22   that you and your counsel and the government's counsel can

23   object to.  Then it becomes my responsibility to determine what

24   the applicable guideline range is for purposes of sentencing.

25             Do you understand that will be the basic process?

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  And while that will be the process, do you

3     also understand that I am not bound to sentence you within the

4     guideline range and could -- but could give you a lower sentence

5     below that range down to probation or a higher sentence up to

6     the five-year maximum if I believe it better serves the

7     statutory purposes of sentencing?

8          THE DEFENDANT:  (No response.)

9          THE COURT:  Do you understand that?

10          THE DEFENDANT:  Yes, I understand.  I understand.  I

11     apologize.

12          THE COURT:  No need to apologize.  This is always a

13     little difficult with an interpreter involved.

14          Having said that, you understand that you are waiving a

15     number of valuable constitutional rights by pleading guilty,

16     including the right to proceed -- to persist in a plea of not

17     guilty and proceed to a jury trial at which the government would

18     have to prove your guilt beyond a reasonable doubt?

19          THE DEFENDANT:  Yes, I understand.

20          THE COURT:  In this case, you're also agreeing to the

21     government proceeding against you by an informal information as

22     opposed to a formal indictment and that the Constitution

23     guarantees you the right to require the government to prove the

24     probable -- or the probable likelihood that you committed the

25     criminal count and the majority of a grand jury find probable

1    cause before they could even proceed to prosecute you.  You

2    understand that in this case you've waived that requirement and

3    given up the right -- or the obligation by the government to

4    prove that it has sufficient evidence to determine probable

5    cause to believe you committed this crime?

6             THE DEFENDANT:  Yes, I understand.

7             THE COURT:  And is this your signature on the waiver

8    dated today waiving your right to only be proceeded against by

9    indictment?

10            THE INTERPRETER:  Excuse me, Your Honor.  May the

11   interpreter request a repetition?

12            THE COURT:  Yes, absolutely.  And it was badly phrased,

13   so it's no wonder you might have had an issue.

14        I just want to confirm that I have a signed waiver here

15   signed by your counsel but also above it signed by you today

16   indicating that you are waiving your right to be proceeded

17   against only by indictment; is that correct?

18            THE DEFENDANT:  (No response.)

19            THE COURT:  You just need to answer --

20            THE DEFENDANT:  Yes.

21            THE COURT:  Very good.  With that then, I will also

22   sign the waiver.

23        You are waiving other valuable constitutional rights by

24   proceeding today, including the right to -- or that by pleading

25   guilty you'll be waiving the right against self-incrimination

1    and the right to require the government to prove each and every

2    element of the charges against you.  You understand that?

3            THE DEFENDANT:  Yes, I understand.

4            THE COURT:  Do you also understand that because you're

5    pleading guilty to a felony offense, that you may be deprived of

6    other civil rights going forward, including the right to vote,

7    to hold public office, to serve on a jury yourself, and the

8    right not only to own but even to possess a firearm?  You

9    understand all of those rights may be denied you going forward?

10            THE DEFENDANT:  Yes, I understand.

11            THE COURT:  And, finally, do you understand that you

12    have a right to court-appointed counsel at government expense if

13    necessary throughout these proceedings whether you persist in a

14    plea of not guilty and go forward to trial or plead guilty today

15    and go forward to sentencing?

16            THE DEFENDANT:  I understand.

17            THE COURT:  With that then, I'm going to switch gears

18    and ask the Assistant U.S. Attorney to summarize the basic terms

19    of the written plea agreement that you have entered into with

20    the government.  I would ask you to listen closely to that

21    summary because at the end of it I'll ask if it is consistent

22    with your understanding of the basic terms of the agreement.

23    All right?

24        With that, Mr. Wegner, if you would be good enough to do

25    that, keeping in mind that we have an interpreter.

1        MR. WEGNER:  Yes, Your Honor.

2        Paragraph 2 of the plea agreement sets forth the maximum

3 penalties the defendant faces by pleading guilty here today.

4        Paragraph 3 states the rights he's giving up by pleading

5 guilty today.

6        Paragraph 4 states that the defendant could be deported

7 from the United States if he's not a United States citizen.

8        Paragraph 5 sets forth the factual basis for the plea.

9        Paragraph 6 states that the United States agrees that this

10 guilty plea will completely resolve all possible federal

11 criminal violations that have occurred in the Western District

12 of Wisconsin provided two conditions are met: number one, the

13 criminal conduct relates to the conduct described in the

14 information, and, two, the criminal conduct was known to the

15 United States as of the date of the plea agreement.

16        Paragraph 7, the parties agree that for purposes of

17 computing the advisory sentencing guideline range, the tax loss

18 amount here, including relevant conduct, is $557,907.19.

19        Paragraph 8, the defendant agrees that he owes $557,907.19

20 in restitution to the IRS, and the parties agree that he will

21 make all IRS restitution payments through the Clerk of Court for

22 the Western District of Wisconsin.

23        Paragraph 9, the United States agrees to recommend that the

24 Court, in computing the advisory sentencing guideline range and

25 in sentencing the defendant, gives him the maximum available

reduction for acceptance of responsibility pursuant to Section 3E1.1 of the guidelines.

Paragraph 10, the defendant agrees to complete a financial statement and return it to my office within one week of today.

Paragraph 11, other than the agreements specifically set forth in this plea agreement, the defendant understands that sentencing discussions are not part of the plea agreement.  He should not rely upon the possibility of a particular sentence based upon any sentencing discussions between defense counsel and the United States other than those that are memorialized in this plea agreement.

Paragraph 12, the United States agrees to recommend that the Court impose a custodial sentence of no more than two years. The defendant acknowledges his understanding that other than the recommendation for a sentence of no more than two years in prison, the United States has made no promises or guarantees regarding the sentence that will be imposed.  The defendant also understands that the Court may not accept the recommendations which may be made by the United States and that the Court can impose any sentence up to and including the maximum penalties.

Paragraph 13, the defendant acknowledges that no threats, promises, representations, or agreements exist other than those set forth in this agreement to cause him to plead guilty.  He acknowledges that he has read this agreement, has carefully reviewed it with his attorney, and understands and voluntarily

1  accepts all of its terms.

2      Finally, in paragraph 14, the defendant and defense counsel

3  acknowledge that this is the only plea agreement in the case.

4      THE COURT:  And just for the record, Mr. Wegner,

5  obviously the government is actually making two recommendations,

6  one for acceptance of responsibility and, secondly, to recommend

7  a sentence of no more than two years.

8      With that said, Mr. Jones, is the summary just provided by

9  the Assistant U.S. Attorney consistent with your understanding

10  of the basic terms of the written plea agreement that will

11  control in this case?

12      MR. JONES:  Yes.

13      THE COURT:  And, Mr. Reyes, is it also consistent with

14  your understanding of the agreement?

15      You may need to speak up.  You said *sí*, meaning yes.  It

16  wasn't interpreted, so I don't want there to be some confusion,

17  but you intended to say yes?  You're still getting the

18  interpreter's assistance?

19      THE INTERPRETER:  I apologize, Your Honor.  I'm not

20  picking up the answer.

21      THE COURT:  Maybe you could just state it again for the

22  record.  Do you want me to restate the question?

23      THE DEFENDANT:  Yes, please.

24      THE COURT:  The question is do you -- is the summary

25  that was just provided by the Assistant U.S. Attorney consistent

1    with your understanding of the written plea agreement itself?

2              THE DEFENDANT:  Oh, yes.

3              THE COURT:  All right.  And other than what's in the

4    plea agreement, has the government made any -- or anyone made

5    any promises or representations to you that are -- that you're

6    relying on in pleading guilty?

7              THE DEFENDANT:  No.

8              THE COURT:  And has anyone threatened or forced you to

9    plead guilty today?

10             THE DEFENDANT:  No, not that either.

11             THE COURT:  Did anyone tell you that you're going to

12   get a specific sentence from this court other than a sentence

13   between probation and five years?

14             THE DEFENDANT:  If I was told that, yes.

15             THE COURT:  And so I want to make sure you understand

16   the government has agreed to recommend no more than two years,

17   but you understand that's not binding on me.  I have an

18   obligation under the statute to review all of the evidence

19   presented at the presentence report and to decide for myself

20   under the statutes what your sentence should be, and I could

21   impose a sentence from probation up to five years by statute.

22   You understand that?

23             THE DEFENDANT:  Yes, I understand.

24             THE COURT:  So I want to make sure that you understand

25   in entering a plea of guilty that the question about the actual

1   sentence here is still very much open because I don't know what

2   sentence I would impose in your case.  Do you understand that?

3           THE DEFENDANT:  I understand.

4           THE COURT:  All right.  And, in particular, you

5   understand that I'm -- that you will not be free to withdraw

6   your plea of guilty even if I determine at the time of

7   sentencing not to follow any recommendation that the government

8   has said it would make?

9           THE DEFENDANT:  Yes, I understand.

10          THE COURT:  With that, we're down to the factual basis

11  of the plea, and I'm just going to confirm that you had a chance

12  to review in detail the specific factual basis that was agreed

13  to in the plea agreement itself.  Have you had a chance to

14  review all of those facts with your counsel?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Mr. Jones, is there anything in that

17  summary in the plea agreement, Document No. 5, paragraph 5, that

18  you believe the government could not prove at trial?

19          MR. JONES:  No.

20          THE COURT:  Mr. Reyes, is there anything in that

21  summary that you believe the government could not prove?

22          THE DEFENDANT:  No.

23          THE COURT:  Then I would ask you to tell me in your own

24  words what it is that you did, what it is that you're proposing

25  to plead guilty to today.

1          THE DEFENDANT:  I tried to avoid, evade taxes.

2          THE COURT:  And is it correct that among the steps you

3    took in that was to significantly underreport your income in the

4    years 2013 and 2014 on your tax returns?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And is it also correct that after

7    determining -- after asking an accountant to determine the

8    amount you owe for 2016, 2017, and 2018, that you created

9    separate entities in which to operate your drywall business so

10   that you could avoid the IRS collecting on your future income?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Is there any further allocution -- I'm

13   sorry.  I suppose I should ask whether the total amount that you

14   owe for the years 2013 to 2018 is $557,907.19?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And it's correct that you have never

17   voluntarily made a payment towards that amount to the IRS?

18         THE DEFENDANT:  That's correct.

19         THE COURT:  Any further allocution that the government

20   believes is necessary before I ask for a plea?

21         MR. WEGNER:  No, Your Honor.

22         THE COURT:  Mr. Jones, any reason why I shouldn't ask

23   for a plea from your client at this time?

24         MR. JONES:  No.

25         THE COURT:  Mr. Reyes, I will ask you formally, how do

1    you plead to the one-count information?

2            THE DEFENDANT:  Guilty.

3            THE COURT:  Based on my discussion with you and your

4    counsel as well as the record in the case as a whole, I am

5    satisfied that you have entered a plea of guilty knowingly and

6    voluntarily after an adequate opportunity to consult with

7    counsel and with an understanding of both the charges against

8    you and the consequences of a plea of guilty.  I am also

9    satisfied that there's a factual basis for your plea.

10   Accordingly, I do find and adjudge you guilty of the one-count

11   information, and I accept the plea agreement conditionally

12   pending review of the presentence report.

13       That report will be due on July 14th, with objections due

14   July 28th, and sentencing to proceed at 1:00 p.m. on August

15   17th.  I believe those dates work for both sides, but I'll hear

16   if there's -- actually, there is something more for the

17   government, and that is whether you consent to the defendant's

18   release based on the standard conditions 1 through 12 as well as

19   conditions -- additional conditions 14, 15, 17, 18, 19, and 22.

20           MR. WEGNER:  Your Honor, the government does object to

21   his release given the fact that he's now pled guilty and he has

22   no legal status here in the United States.  He's not a citizen

23   of the United States.  He's a citizen of Mexico.  There's a

24   Pretrial Services report also stating he has quite a bit of

25   family in Mexico as well, so the government does view him as a

1    risk of flight and would object to his release.

2            THE COURT:  And I had reviewed the Pretrial Services

3    report, but the probation office didn't agree with you and

4    believed that, given his appearance to date and lack of danger

5    to the community, that his supervision could be monitored.  Is

6    there something -- some additional argument you have for

7    requiring, other than that he will have an immigration issue as

8    well or may have an immigration issue as well?

9            MR. WEGNER:  No additional argument, Your Honor.  I

10   think I just disagree with the probation office's determination.

11           THE COURT:  There's no detainer in place by

12   immigration?

13           MR. WEGNER:  Not at this time, no.

14           THE COURT:  Then I am going to release the defendant

15   based on the recommendation of the probation office.  I want to

16   make sure, Mr. Reyes, that you understand the conditions that

17   will be required of you upon release, which will include

18   reporting to the marshal's office and reviewing these conditions

19   with your supervising probation officer.

20       Have you had a chance to talk about those things with your

21   counsel?

22           THE DEFENDANT:  Yes.

23           THE COURT:  In particular, you understand that you have

24   an obligation to notify the probation office if you should have

25   any interactions with the police of any kind.  You should -- or

1    they have a zero policy with respect to drug use, and you'll

2    need to report in advance all changes in employment, residence,

3    and telephone to the probation office.  You understand that?

4              THE DEFENDANT:  I understand that.

5              THE COURT:  In addition, you understand that you're not

6    to possess any kind of firearm, destructive device, or dangerous

7    weapon, and you are to seek and maintain employment consistent

8    with a manner approved by the Pretrial Services?  You understand

9    that as well?

10             THE DEFENDANT:  I understand.

11             THE COURT:  And you are not to associate with any

12   person using or possessing controlled substances or that you

13   knew previously has used or possessed them and to avoid places

14   where those substances may be possessed or dispensed.

15             THE DEFENDANT:  I understand.

16             THE COURT:  You're also required to submit to

17   urinalysis, that is to say, to show up for drug testing at the

18   direction of the -- of your probation officer.

19             THE DEFENDANT:  I understand.

20             THE COURT:  And, finally, that you're not to travel

21   outside the geographic area, that is to say, the western

22   two-thirds of the State of Wisconsin, which is the Western

23   District of Wisconsin, except when approved by the probation

24   office in advance.

25             THE DEFENDANT:  I understand.

1          THE COURT:  All right.  Then after this hearing, I'll

2    provide this to your counsel so that you can review it and sign

3    it and then proceed to the marshal's office where you will be

4    released under these terms and conditions.  All right?  You

5    understand?

6          THE DEFENDANT:  I understand.

7          THE COURT:  I want to emphasize the importance of

8    making sure you're in compliance.  Not only is it important

9    because I will consider it along with the presentence report at

10   the time of sentencing whether you've remained in full

11   compliance with these conditions, but also because if you were

12   to violate these conditions and the probation office recommend

13   your detention, it would affect where you might be placed if I

14   were to require you to serve any time in prison.

15        Again, I do not know what your sentence should be.  I am

16   happy to consider any information I'm provided before sentencing

17   at least two days before sentencing.  I would encourage your

18   cooperation in the preparation of the presentence report, but

19   you should follow Mr. Jones' advice with respect to both your

20   cooperation and providing other information to the Court.  He's

21   in the best position.  In fact, he's ethically bound to look out

22   for your interests.

23        Is there anything more for the government at this time?

24        MR. WEGNER:  No.  Thank you.

25        THE COURT:  Anything more for the defense?

1          MR. JONES:  No.  Thank you.

2          THE COURT:  Then we are adjourned, I believe, and I'll

3   just sign this for your benefit, Mr. Jones.

4          MR. JONES:  Sure.  We'll head up to the marshal's

5   office right after that.

6          THE CLERK:  This Honorable Court stands adjourned.

7      (Proceedings concluded at 1:52 p.m.)

8                              ***

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit

2    Reporter in and for the State of Wisconsin, certify that the

3    foregoing is a true and accurate record of the proceedings held

4    on the 24th day of May, 2023, before the Honorable

5    William M. Conley, U.S. District Judge for the Western District

6    of Wisconsin, in my presence and reduced to writing in

7    accordance with my stenographic notes made at said time and

8    place.

9    Dated this 30th day of August, 2023.

10

11

12

13

14

15                              /s/ Jennifer L. Dobbratz

16                    Jennifer L. Dobbratz, RMR, CRR, CRC
                           Federal Court Reporter
17

18

19

20

21

22

23

24    The foregoing certification of this transcript does not
      apply to any reproduction of the same by any means unless under
25    the direct control and/or direction of the certifying reporter.